UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JOHN M. MASON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:05-CV-159-TS |
| | ) | |
| FORT WAYNE FOUNDRY CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DE 20] filed by the Defendant, Fort Wayne Foundry Corp., on February 10, 2006. For the reasons stated herein, the Defendant's Motion is granted.

**BACKGROUND**

On September 14, 2004, the Plaintiff, John M. Mason, filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that his former employer discriminated against and discharged him on the basis of his race and retaliated against him for seeking benefits that all employees were entitled to under the Collective Bargaining Agreement (CBA). On January 25, 2005, the EEOC issued a Dismissal and Notice of Rights. On April 25, the Plaintiff filed his Complaint in the Allen Superior Court. He asserted claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981. On May 9, the Defendant removed the suit to federal court and on June 20 filed an Answer.

On February 10, 2006, the Defendant moved for summary judgment on all the Plaintiff's

claims. After full briefing, including sur-replies by both parties, the matter is ripe for ruling.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight

2

of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

There is no separate rule of civil procedure governing summary judgment in employment discrimination cases. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997) (noting, however, that issues of intent, such as in discrimination cases, are often critical issues that are genuinely contestable). Summary judgment in favor of the defendant is hardly unknown, or for that matter rare, in employment discrimination cases. *Id.*

## MATERIAL FACTS

The Plaintiff began his employment with the Defendant in December 1997. On November 21, 2003, he was terminated. The circumstances surrounding this discharge are the focal point of the Plaintiff's lawsuit.

The Plaintiff's employment was governed by the terms and conditions of the CBA that was negotiated between the UAW Local 1101 (the Union) and the Defendant. On the date that he was terminated, the Plaintiff was working as a second shift forklift operator. During his tenure with the Defendant, the Plaintiff had also worked on the third shift, where he served as a Third Shift Union Steward from late 1999 until his move to second shift in February 2003.

Before the start of his 4:00 p.m. shift on November 17, 2003, the Plaintiff learned that his mother-in-law, who lived in Missouri, was gravely ill and would probably not live through the night. The Plaintiff called and left three separate messages on the answering machine maintained by the Defendant for the designated purpose of recording messages from employees who were reporting

3

their absences. Each time, the Plaintiff reported that he would be out of town to "attend to his mother-in-law's death bed" and that he was requesting leave for an indefinite period of time. (Pf.'s Dep. at 48–9.) The Plaintiff called three times because he was aware, from his experience as a Union Steward, of problems in the past with the tape being garbled. He was also aware that, under the CBA, employees were required to call the company when they were going to be absent, or they would incur additional attendance points. In addition, Article X, Section 4(c), of the CBA provides that an employee ceases to have seniority and is no longer a member of the bargaining unit if he "is absent for three (3) consecutive working days without notifying the Company, unless there is a reasonable excuse which is acceptable to the Company." (DE 20, Ex. A at 22.) The reference to loss of seniority and ceasing to be a member in the bargaining unit means discharge or termination.

To resolve attendance disputes regarding who called the Company and what they said, the Company and the Union instituted a procedure where a Union representative and a Company representative would listen to the recorded messages, termed the "daily call-off," at a designated time each day. They would check the messages against a list of employees who were absent that day. The representatives would transcribe the information on a Notice of Tardy/Absence form and present it to management for processing. The Company representative was often a security guard, who was a member of the Leadership Committee.

Although not addressed in the CBA, the Defendant also allowed its employees to take emergency leaves of absence. An employee would have to call a member of management, usually the Human Resources Manager, Kenneth Raszka (Raszka), and explain the emergency. Depending on the circumstances, the Company would then allow the employee to use vacation days or other leave. Unless the employee specifically asked for, and was granted, more than one day of leave, the

4

employee would be required to call each day that he was absent.

On November 17, 2003, Byron Dickerson (Dickerson) from the Union and Paul Jones (Jones), a security guard from the Company, listened to the recorded call-offs. A Notice of Tardy/Absence form for the Plaintiff's call-off was completed and presented to Raszka. It stated that the Plaintiff was "out of town," his mother-in-law was "very ill" and he had called three times. There was no reference to a death bed or funeral. Raszka did not listen to the messages himself, but in accordance with his normal procedure, relied on the Notice.

The Plaintiff's mother-in-law passed away on November 18 and he attended her funeral in Missouri. He was absent from work the entire week, Monday, November 17 through Friday, November 21. However, after the three phone calls on Monday, he did not call the Company to report his absence. He attempted to call the Defendant on the 18th, but difficulties with his cell phone prevented him from making contact.

On November 21, Raszka determined that the Plaintiff had been absent from work without contacting the Company for three consecutive working days, November 18, 19, and 20. He prepared a Corrective Action and Discharge Notice terminating the Plaintiff for violating Article X, Section 4(c), of the CBA. Dickerson also signed the discharge Notice as the Union Representative. On this same date, Raszka mailed the Plaintiff written notification that his employment was terminated for violation of the CBA no call-no show rule.

When the Plaintiff returned to work on Monday, November 24, he gave Raszka a copy of an obituary for his deceased mother-in-law. This was the first time that Raszka learned that the Plaintiff's mother-in-law had passed away. Raszka informed the Plaintiff that he had already processed a Notice of his termination for violating the three day no call–no show provision. The

5

Plaintiff told Raszka that he had called and requested emergency leave for an indefinite period and that his mother-in-law was on her death bed. Raszka stated that the Plaintiff was suspended pending an investigation.

On November 26, the Union filed a grievance claiming that the Plaintiff's termination was an unfair discharge. The Union took the position that a death in the family should be an acceptable excuse for failing to report off and that the Plaintiff had attempted to call but could not get a signal. The Company denied the grievance and did not reinstate the Plaintiff. However, the Company did pay the Plaintiff bereavement pay for the three days that he was absent prior to his termination. Under the CBA, an employee is entitled to up to three days of paid funeral leave with an additional day, if requested, for a funeral that is more than 200 miles from the plant.

On September 14, 2004, the Plaintiff filed his Charge of Discrimination with the EEOC.

## DISCUSSION

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To be actionable, the offensive conduct must be based on one of the characteristics protected by Title VII, such as race.  42 U.S.C. § 2000e-2(a)(1).

An employee may prove that an employer violated Title VII by providing either direct or indirect evidence of unlawful discrimination.

> [D]irect evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir.2000). It should not be surprising that in today's politically correct workplace environment such admissions are rarely, if ever, made or encountered. *See id.* Therefore, a plaintiff may also "prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that

6

> 'allows a jury to infer intentional discrimination by the decision-maker.' " *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir.2004); *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir.1994). Nonetheless, under the direct method, circumstantial evidence "must point directly to a discriminatory reason for the employer's action."

*Jordan v. City of Gary, Ind.,* 396 F.3d 825, 832 (7th Cir. 2005).

When a plaintiff has no direct evidence of discrimination, he can create a triable issue of fact as to whether he was discriminated against on the basis of his race and survive summary judgment through the familiar burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this method, the plaintiff must show that: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered a materially adverse employment action; and (4) his employer treated similarly situated employees outside the protected class more favorably. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861 (7th Cir. 2005). If the Plaintiff fails to establish even a single prong of his prima facie case, his claim cannot survive summary judgment. *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002).

When a plaintiff successfully establishes a prima facie case, a presumption of discrimination is created, and the burden shifts to the defendant to provide some legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.  If the defendant provides legitimate reasons, the inference of discrimination disappears and the plaintiff must establish by a preponderance of the evidence that the proffered reasons are pretextual because they had no basis in fact, did not actually motivate the defendant's decisions, or were insufficient to motivate its decisions, *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995), or by pointing to a discriminatory reason that was the more likely motivator, *Debs v. Ne. Ill. Univ.*, 15 F.3d 390, 395 (7th Cir. 1998).

A.      **Similarly-Situated Employees**

Although the Plaintiff makes some reference to a "mosaic of evidence" in his response brief, he defends against the motion for summary judgment primarily under the indirect method of proof. The Court finds, based on the undisputed material facts, that the Plaintiff cannot make out a prima facie case of race discrimination under Title VII because he cannot establish that similarly-situated employees of a different race were treated more favorably.

The Plaintiff argues that this case is not about any violation of the CBA, but is about the Defendant's discriminatory and retaliatory treatment of him for using funeral leave. Because he has chosen to frame the issue in this way, the employees that the Plaintiff identifies as being treated more favorably, are not "directly comparable to [the plaintiff] in all material respects." *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002) (defining similarly situated for purposes of *McDonnell Douglas* prima facie case). By arguing that he was terminated for taking funeral leave, rather than for failing to notify his employer of his absences, the Plaintiff ignores the Defendant's evidence that no employee who failed to call in his absences for three consecutive days was excused for failing to call, thereby avoiding termination. In his deposition, Raszka offered the Company's position regarding excuses for failing to notify it of absences:

> [I]n today's technical world there are too many opportunities for communication; either e-mail, you can purchase the little credit cards at the local gas station, cell phones, land line phones, there's just way too many opportunities for communication these days. So I don't know of any lack of communication that would be accepted by Fort Wayne Foundry.

(Raszka Dep. at 19.) In support of its motion for summary judgment, the Defendant provided the affidavit of David Lorey, the Defendant's Human Resources Director. He stated that he examined personnel files involving Article X, Section 4(c), violations and was unable to identify any

8

circumstance under which a bargaining unit employee believed to have violated that provision of the CBA was not subject to termination. (Lorey Aff., ¶¶ 20–21.)

Instead of addressing this evidence, the Plaintiff points to the fact that no other employee has ever been terminated for taking funeral leave. However, the Plaintiff cannot escape the fact that a similarly situated employee for purposes of the *McDonnell Douglas* prima facie case is not one who has simply taken funeral leave. Rather, the similarly situated employee is one who has failed to inform the Defendant for three consecutive days of the reason for his absence, and only informed it after the fact that the absences were for a legitimate reason, such as to attend a funeral. The Seventh Circuit requires that a plaintiff who claims that he was disciplined by his employer based on some prohibited reason, show that he is similarly situated with respect to performance, qualifications, and conduct to an employee who was not disciplined in the same manner. *Snipes v. Ill. Dept. of Corrs.*, 291 F.3d 460, 463 (7th Cir. 2002). The conduct the two employees engaged in should be similar, "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quoting *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)). Here, the differentiating factor between those employees who took funeral leave and the Plaintiff is that he was absent for three consecutive days without reporting his absences or the need for funeral leave. This difference sufficiently accounts for any disparity, "thereby preventing an inference of discrimination." *Id.* (quoting *Radue*, 219 F.3d at 618).

The Court is aware that the Plaintiff disputes that he failed to report his absences; the Plaintiff argues that he reported a need for indefinite leave and that his reference to his mother-in-law's "death bed" was sufficient to put the Company on notice that he was requesting emergency leave to attend a funeral. And although the Court assumes, as it must for purposes of summary

9

judgment, that the Plaintiff's telephone messages referenced both death bed and indefinite leave, it is undisputed that Raszka, the decision maker in this case, never heard the messages and relied on the Notice prepared by Dickerson and Jones. This Notice did not reference a funeral or a need for extended or indefinite leave. Raszka testified in his deposition that while the Notice may not have been "verbatim," he believed Dickerson and Jones took very good notes because of past issues relaying to management what an employee calling in to report an absence actually said. (Raszka Dep. at 25.) These issues were what prompted the Company to use an answering machine and have a representative from both the Union and the Company listen to the messages and prepare a corresponding written Notice to give to management.

It is undisputed that the Plaintiff was absent an entire week, that Raszka received no further Notices after the 17th, and that Raszka did not learn until the following Monday that there had been a death in the Plaintiff's family. The Plaintiff claims that the fact that he later offered proof that he was attending a family member's funeral should have prompted Raszka to conclude that the Plaintiff did not violate the no call-no show provision of the CBA. However, there is no evidence that the Company accepted recorded messages for indefinite emergency leave or that a reference to a family member's death bed was adequate notice of the need for funeral leave that excused the employee from contacting the Company each day of his absence. Thus, not only was Raszka not required to believe that the Plaintiff actually made these references, given the content of the Notice he received, but even if he believed the Plaintiff's account of what he said on the 17th, Raszka was not required to find that this constituted adequate notice or excuse. The fact that the Plaintiff was actually attending a funeral that qualified for paid leave under the CBA goes to the reason he was absent, it does not go to whether he adequately reported those absences. Thus, even if the similarly situated

employee is not one who has failed to inform the Defendant for three consecutive days of the reason for his absence, it is the employee who attempted to obtain indefinite emergency leave, to attend a funeral or otherwise, with a recorded message left on the first day of that indefinite leave. Either way, the Plaintiff has not pointed the Court to any similarly situated employee outside the protected class who was treated better.

While the Plaintiff does not identify similarly situated employees in the context of showing a prima facie case of discrimination, he does, in an attempt to prove that the violation of Article X, Section 4(c), of the CBA was not the real reason for his termination, point to other employees who he believes received different disciplinary treatment in spite of having committed serious rule violations. However, these "incomplete or arbitrary comparisons reveal nothing concerning discrimination . . . More evidence than the mere fact that other employees were not discharged for at best arguably similar misconduct must be demonstrated to sustain a charge of intentional discrimination." *Hiatt v. Rockwell Int'l Corp.* 26 F.3d 761, 771 (7th Cir. 1994). The Plaintiff contends that Kevin Fullrod, a white employee, was reinstated after being terminated for creating a work stoppage, "or something." (Pf.'s Dep. at 60.) Not only is a work stoppage not similar conduct, but the Plaintiff does not present any details regarding Fullrod's termination or reinstatement, such as the CBA provision involved, the circumstances regarding the stoppage, whether he filed a grievance, or whether he was reinstated following arbitration. The only information the Plaintiff provides regarding Whetsonte, another non -African-American employee who he claims was treated better, was that he believed Whetsonte's "relationship with management allowed them to be more sympathetic to his needs and desires." (Pf.'s Dep. at 66.) The Plaintiff acknowledges that Whetsonte was never terminated and reinstated and provides absolutely no

11

information regarding how Whetsonte was treated better. The only other employee outside the protected class that the Plaintiff mentions is a janitor who he believes was absent for three days and was granted time off retroactively. (Pf.'s Dep. at 46.) The Plaintiff does not indicate whether the unidentified janitor failed to report his absences or was believed to have violated any work rule, much less the no call-no show rule that the Company believed the Plaintiff violated. With this limited information, the Court cannot say that these employees were similarly situated in all material respects.

Because the Plaintiff has failed to establish a prima facie case of discrimination and does not present direct or circumstantial evidence that would allow a jury to infer that race was a motivating factor in his termination under the direct method of proof, his claim does not survive summary judgment.

**B.     Legitimate Job Expectations and Pretext**

Even if the Court assumes that the Plaintiff pointed to similarly situated employees, his claim could not proceed to a jury because he has not established that requiring him to report his absences was not a legitimate job expectation that actually motivated the Defendant to terminate him. Because the Plaintiff claims that the Defendant is lying about its reason for terminating him and would have excused an employee outside the protected class, the second prong and the pretext question seemingly merge. *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir.1997) ("The defendant's expectations are not legitimate if they are phony; so if they are argued to be phony, the issue of legitimate expectations and the issue of pretext seem to merge."); *cf Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327 (7th

12

Cir. 2002) (stating that, normally, if an employee fails to demonstrate that he was meeting his employer's legitimate expectations, the employer may not be put to the burden of stating the reason for his termination). The court may focus on the question of pretext, keeping in mind that if the plaintiff does not present sufficient evidence of pretext, he also does not show that he was meeting his employer's expectations. *Hague*, 436 F.3d at 823.

  The Plaintiff presents several arguments that he believes establish that the Defendant was lying. He contends that it is logically inconsistent to believe that the Defendant fired the Plaintiff for a violation of the no call-no show rule when it paid him for three days of funeral leave. He also argues that Raszka's reliance on the Notice of Tardy/Absence was objectively unreasonable. Finally, the Plaintiff points to the fact that Raszka did not conduct an investigation as evidence that his violation of the CBA was not the real reason for his termination.

  None of these arguments establish pretext. As Raszka explained, the Plaintiff was not technically terminated until after the third consecutive day of his absence without calling. Thus, he was entitled to funeral leave for the days he was absent and still an employee. Paying him for this leave does not demonstrate that the Company did not believe the Plaintiff failed to obtain permission for the leave or even to report his absence, regardless of the legitimacy of the reason for the absences. The Plaintiff's argument that Raszka's reliance on the Notice was inappropriate is merely an attack on the procedure used by the Company to determine which employees used the call-off system to report absences. The Plaintiff has not demonstrated that Raszka normally listened to the messages himself. In fact, Raszka stated in his affidavit that it was not his practice to listen to the messages. He only did so if he was informed that the tape was garbled and he was not told that the Plaintiff's messages were garbled or unclear. He also testified that he believed that the Notice

13

accurately transcribed what the Plaintiff said in his messages and that if the Plaintiff wanted additional leave, it was his responsibility to call the Company each day of his absence or to speak to a member of management to secure the use of vacation days or personal leave to cover his absences. Pretext is not an invitation to challenge a company's procedures because, "[o]n the issue of pretext, our only concern is the honesty of the employer's explanation." *O'Connor v. DePaul Univ.*, 123 F.3d 665, 671 (7th Cir.1997). Accordingly, even if Raszka's reasons for the Plaintiff's termination were "mistaken, ill considered or foolish, so long as [Raszka] honestly believed those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir.2000). Thus, even if Raszka was incorrect in his conclusion that the Plaintiff's initial phone messages were not sufficient to put the Company on notice that he was taking funeral leave for the rest of the week, it would not establish pretext. Although the Plaintiff may believe that Raszka could have done more to investigate whether he violated the CBA, "this court is not a personnel director, judging the fairness of employment decisions. Rather, this is a discrimination case, and to avoid summary judgment, the plaintiff[ ] must present evidence of pretext." *Hague*, 436 F.3d 816, 829–30 (7th Cir. 2006). "This court does not sit as a super-personnel department that re-examines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986).

The Plaintiff has not presented evidence from which a reasonable jury could determine that, not only was his discharge unfair, but that it was unfair because it was motivated by his race. There are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law.

**C.    Section 1981**

Section 1981 prohibits discrimination on grounds of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a). In examining a § 1981 claim, courts employ the same framework that is used with respect to Title VII claims. *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999) (citing *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998); *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996)). For the reasons set forth above as to the Plaintiff's Title VII claims, the Court finds that no material facts are in dispute and that the Defendant is entitled to judgment as a matter of law on the Plaintiff's § 1981 claim.

## CONCLUSION

For the forgoing reasons, the Defendant's Motion for Summary Judgment [DE 20] is GRANTED. Judgment will be entered in favor of Fort Wayne Foundry Corporation and against John M. Mason.

SO ORDERED on May 22, 2006.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT